## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| RAZZOO'S, INC., *et al.*, | Case No. 25-90522 (ARP) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE RETENTION OF STOUT CAPITAL, LLC
## AS INVESTMENT BANKER TO THE DEBTORS, EFFECTIVE
## AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 11:00 A.M. (PREVAILING CENTRAL TIME) ON NOVEMBER 4, 2025.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 4, 2025 AT 11:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Razzoo's, Inc. (9753) and Razzoo's Holdings, Inc. (9608).  The Debtors' service address is 14131 Midway Road, Suite 750, Addison, Texas 75001.

Razzoo's, Inc., *et al.*, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this this *Emergency Application for Entry of an Order (I) Authorizing the Retention of Stout Capital, LLC as Investment Banker to the Debtors, Effective as of the Petition Date, and (II) Granting Related Relief* (the "Application"), and in support hereof, respectfully state as follows:

## I.   JURISDICTION AND VENUE

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this Application are sections 327, 328, and 1107 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2014 and 9013 of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II.   BACKGROUND

3.      On October 1, 2025, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered by the Court under Case No. 25-90522.

4.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has

2

been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5.      Since 1991, Razzoo's has delivered a mix of Cajun culture, bold bayou cuisine, and an upbeat atmosphere to guests across multiple states. Bolstered by positive cash flow and customer enthusiasm for the concept, Razzoo's grew to six (6) total locations by 1996, fourteen (14) total locations by 2001, and reached a peak of twenty-four (24) locations across Texas, North Carolina and Oklahoma. For over thirty years, the Debtors have served soulful Cajun food to loyal guests and have demonstrated their ability to succeed in the casual dining space.

6.      As a result of the declining sales volumes, the Debtors' long-term lease obligations became increasingly burdensome on their liquidity situation with a sizeable portion of their monthly cash flow dedicated to rent. Despite the benefits realized from ongoing cost saving initiatives implemented by their experienced management team, the Debtors' liquidity situation left them unable to service the ongoing lease obligations, ordinary course trade payables, and the prepetition secured debt obligations owed to First Horizon Bank ("First Horizon" or the "Senior Secured Lender").

7.      The Debtors have since closed four (4) underperforming locations and now operate twenty (20) free-standing and end cap locations. With a strong geographic foothold in the state of Texas, the Debtors believe that the Razzoo's brand remains well-positioned for additional expansion throughout the Southeast. The Debtors commenced these voluntary Chapter 11 Cases to effectuate the sale or financing transactions that will be necessary to reorganize their financial affairs, preserve thousands of jobs, and ensure that Razzoo's continues providing guests with the highest quality Cajun cuisine and hospitality.

8.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Philip Parsons in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day Declaration").[2]

9.      After making the decision to file the Chapter 11 Cases, the Debtors engaged Stout Capital, LLC ("Stout Capital") as an investment broker on or about September 8, 20205 to market the Debtors' assets.

### III.      RELIEF REQUESTED

10.     By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing the employment and retention of Stout Capital as investment banker for the Debtors in accordance with the terms and conditions of the Engagement Agreement, which is attached to this Application as **Exhibit A** and incorporated herein by reference.

### IV.      STOUT CAPITAL'S QUALIFICATIONS

11.     The Debtors have determined that it is necessary to engage a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through these Chapter 11 Cases.  The Debtors believe that the retention of an investment banker is necessary and appropriate in evaluating the financial and economic issues raised by the Debtors' chapter 11 proceedings and successfully consummating a sale of substantially all of their assets.  The Debtors, therefore, propose to retain Stout Capital as their investment banker in these Chapter 11 Cases.

12.     As set forth in the Declaration of Luis Pillich (the "Pillich Declaration"), which is attached to this Application as **Exhibit B** and incorporated herein by reference, Stout Capital is

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the Engagement Agreement, as applicable.

one of the industry's leading advisors for investment banking services. Stout Capital's professionals have extensive experience in providing investment banking services to financially distressed companies relating to merger and/or acquisition transactions, among other matters. Stout Capital and its senior professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

13.     The Debtors selected Stout Capital as their investment banker in these Chapter 11 Cases based upon the extensive investment banking experience that Stout Capital's professionals have with distressed companies, as well as their excellent reputation for such services.  Stout Capital professionals have provided investment banking, financial advisory, and other services in connection with many major or significant chapter 11 cases, including: *Buca Texas Restaurants, Better For You Foods, Fresh Food Group, Goodrich Quality Theatres, UpHealth Holdings, Suitable Technologies, LaVie Care Centers, LLC, LifeCare Holdings, Acadiana Management Group, Curative Health Services, Alliant Technologies LLC, Inc., Altegrity, Inc., Hawaiian Telcom, Chemtura Corporation, Oriental Trading Company, Inc., Frontier Airlines, Baxano Surgical, Inc., Westlake Surgical LP, Nuvectra Corporation, and many other transactions.*

14.     On September 8, 2025, the Debtors retained Stout Capital to exclusively provide investment banking services in connection with one or more merger and/or acquisition transactions involving the Debtors and other various matters related thereto.  In connection therewith, Stout Capital has become familiar with the Debtors' corporate and capital structure, management, and business operations and has gained significant institutional knowledge of the Debtors' businesses and financial affairs, objectives, and other potential issues that may arise in the context of these Chapter 11 Cases.  Accordingly, Stout Capital is both well qualified and uniquely able to render

investment banking services to the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## V.       TERMS OF THE STOUT CAPITAL ENGAGEMENT

### A.    Services to be Provided

15.    Subject to the Court's approval, the Debtors anticipate that Stout Capital will continue to perform the following investment banking services in connection with the Transaction,[3] as set forth in the Engagement Agreement, as mutually agreed upon by Stout Capital and the Debtors, which may include the following:

a)    assisting the Debtors in the development and distribution of selected information, documents, and other materials, including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

b)    assisting the Debtors in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirors and/or strategic partners;

c)    assisting the Debtors with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

d)    providing expert advice and testimony at Court hearings in these Chapter 11 Cases regarding financial matters related to any Transactions(s), if necessary;

e)    attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors and Stout Capital mutually agree; and

f)    providing such other investment banking services as may be required by additional issues and developments.

---

[3] "Transaction" is defined in the Engagement Agreement as "[a]ny transaction or series of related transactions that constitute the disposition to one or more third parties . . . in one or a series of related transactions of (a) all or a material portion of the equity securities of any entity comprising the Company or any interest held by any entity comprising the Company and/or (b) any material portion of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company or any joint venture or partnership or other entity formed by it, or any similar transaction, including, without limitation, any Transaction under Sections 363, 1129 or any other provision of [the Bankruptcy Code] . . . ."

4918-8678-4370, v. 3

16.     Because of the extensive investment banking services that will be necessary in the Chapter 11 Cases, and the fact that the full nature and extent of such services are not known at this time, the Debtors believe that the employment of Stout Capital for all of the Debtors' purposes set forth above would be appropriate and in the best interest of the Debtors.

17.     The Debtors believe that the services that Stout Capital will provide will not duplicate the services that other professionals to be retained in these Chapter 11 Cases will provide to the Debtors.  The Debtors will use reasonable efforts to coordinate with each of the professionals they retain to prevent unnecessary or inefficient duplication of services.

**B.**      **Professional Compensation and Record Keeping**

18.     As set forth more fully in the Engagement Agreement, Stout Capital and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"): [4]

a)     **Monthly Fee.**  Upon the execution of this Agreement, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Stout Capital a monthly fee (the "Monthly Fee"). Each Monthly Fee shall be earned upon Stout Capital's receipt thereof in consideration of Stout Capital accepting this engagement and performing services as described herein. The first four (4) Monthly Fees paid to Stout Capital shall be credited against the Transaction Fee (as defined below) to which Stout Capital becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fee be reduced below zero; and

b)     **Transaction Fee.**  In addition to the other fees provided for herein, the Company shall pay Stout Capital the following Transaction Fee(s):

i.)     *Restructuring Transaction Fee:* A Restructuring Transaction Fee upon consummation of a Restructuring Transaction, which shall be payable by the Company to Stout Capital upon the earlier to occur of (A) the entry of an order of the applicable Bankruptcy Court allowing and authorizing such payment; or (B) the occurrence of the

---

[4] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Agreement, the terms of the Engagement Agreement shall control.

4918-8678-4370, v. 3

effective date of confirmed plan of reorganization or liquidation under Chapter 11 of the Bankruptcy Code.

ii.) *Sale Transaction Fee:* A sale transaction fee upon the closing of a Sale Transaction (the "Sale Transaction Fee"), which shall be earned and payable by the Company to Stout Capital from the gross proceeds of such Sale Transaction upon the earlier to occur of (A) the entry of an order of the applicable Bankruptcy Court allowing and authorizing such payment; (B) the occurrence of the effective date of confirmed plan of reorganization or liquidation under Chapter 11 of the Bankruptcy Code; or (C) at closing of the Sale Transaction in the event the Sale Transaction occurs outside of the Bankruptcy Court. The Sale Transaction Fee shall be based upon Aggregate Gross Consideration (as defined below) and calculated as follows:

For AGC up to $17.5 million:      $750,000, plus

For AGC greater than $17.5 million: 5% of such incremental AGC.

19.     If the Sale Transaction is consummated by a credit bid, the party who bid on credit will be responsible for paying the cash value of Stout Capital's Sale Transaction Fee.

20.     The Debtors also agree to reimburse Stout Capital for all of its reasonable out-of-pocket expenses (including reasonable fees and out-of-pocket expenses of its legal counsel) in connection with the performance of its services, regardless of whether a Transaction occurs.

21.     The Fee and Expense Structure set forth in the Engagement Agreement is reasonable. The Fee and Expense Structure appropriately reflects both the nature of the services to be provided by Stout Capital and the fee structures typically utilized by leading investment banking firms of similar stature to Stout Capital for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Stout Capital's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the Chapter 11 context; (c) Stout Capital professionals' substantial experience with respect to investment banking

services; and (d) the nature and scope of work to be performed by Stout Capital in these Chapter 11 Cases.  The Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.

22.     As set forth above, Stout Capital is not charging for its services on an hourly basis. As is customary for Stout Capital and other investment bankers in engagements of this nature, Stout Capital is charging a fixed Monthly Fee and Sale Transaction Fee for the advisory and investment banking services set forth in the Engagement Agreement, and as may be approved by this Court. Accordingly, the Debtors are advised that Stout Capital will not maintain or keep detailed time records for services as customarily kept by attorneys.

23.     Notwithstanding the foregoing, Stout Capital has agreed to apply for final allowance and approval of Sale Transaction Fee compensation for professional services rendered in connection with the Chapter 11 Cases, subject to approval of this Court and compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules. Specifically, the Debtors and Stout Capital understand and agree that the proposed compensation arrangement in the Engagement Agreement is subject to section 328(a) of the Bankruptcy Code, which authorizes this Court to allow compensation different from what is provided in the Engagement Agreement, if the fee arrangement, in retrospect, appears to have been improvident in light of developments unanticipated at the outset. However, the compensation arrangement should not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, and the Debtors request that Stout Capital: (a) be excused from keeping time records for services rendered in one-tenth of an hour increments; (b) only be required to maintain expense reimbursement records; and (c) only be required to submit a narrative summary of services

rendered and the total amount of compensation requested for final approval in any final fee application.

24.     Stout Capital will maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

## C.     <u>Indemnification of Stout Capital</u>

25.     As part of the overall compensation payable to Stout Capital under the terms of the Engagement Agreement, the Engagement Agreement provides for certain indemnification obligations to Stout Capital and its affiliates and their respective former and present directors, officers, employees, agents and controlling persons, to the fullest extent lawful, from and against any losses, claims, damages, and liabilities, joint or several, as incurred, in connection with, relating to, or arising from any transaction contemplated by the Engagement Agreement or the engagement of or performance of services by an Indemnified Party (the "<u>Indemnification Provisions</u>").[5] The Debtors have been advised that the Indemnification Provisions are customary and reasonable terms of consideration for financial advisors and investment bankers for proceedings both out of court and in chapter 11 cases.  The terms of the Indemnification Provisions were negotiated between the Debtors and Stout Capital at arm's-length and the Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates and creditors.

## D.     <u>Compensation Received by Stout Capital from the Debtors</u>

26.     As set forth in the Pillich Declaration, on September 22, 2025, Stout Capital received an initial Monthly Fee of $30,000.00 in accordance with the Engagement Agreement.

---

[5] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in the Engagement Agreement, the terms of the Engagement Agreement shall control.

The Debtors have been advised that Stout Capital has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

## VI.   STOUT CAPITAL IS "DISINTERESTED"

27.     Stout Capital has informed the Debtors that as of the date hereof, except as set forth in the Pillich Declaration:  (a) Stout Capital has reviewed the interested parties list provided by the Debtors and attached to the Pillich Declaration as Schedule 1 (collectively, the "Potential Parties in Interest") and identified those Potential Parties in Interest that have existing relationships with Stout Capital unrelated to the Debtors and these Chapter 11 Cases on Schedule 2 thereto. To the best of Stout Capital's knowledge, as of the date hereof, and except to the extent disclosed herein, and in the Pillich Declaration, Stout Capital is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) Stout Capital does not have or represent any entity having an interest adverse to the interests of the Debtors, their estates, or of any class of creditors or equity security holders; and (c) Stout Capital (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two (2) years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Stout Capital professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the Southern District of Texas, the U.S. Trustee, or any person employed by the Office of the U.S. Trustee.

28.     As set forth in further detail in the Pillich Declaration, Stout Capital has certain connections with creditors, equity security holders, and other parties in interest in these Chapter 11 Cases.  All of these matters, however, are unrelated to these Chapter 11 Cases.  The parties do

11

not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

29.     Based on the Pillich Declaration, Stout Capital is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and as utilized in section 328(c) of the Bankruptcy Code.

30.     To the extent that any new relevant facts or relationships bearing on the matters described herein are discovered or arise during the period of Stout Capital's retention, Stout Capital will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## VII.    <u>BASIS FOR RELIEF</u>

31.     The Debtors seek to retain Stout Capital as their investment banker pursuant to sections 327 and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ one or more attorneys, accountants . . . or other professional person."  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

32.     Given the numerous issues that Stout Capital may be required to address in performing its services for the Debtors pursuant to the Engagement Agreement, Stout Capital's commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Stout Capital's services for engagements of this nature, the terms and conditions of the Engagement Agreement are fair, reasonable, and market-based under

the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure appropriately reflects (a) the nature and scope of Stout Capital's services, (b) Stout Capital's substantial experience with respect to investment banking services, and (c) the fee structures typically utilized by Stout Capital and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

33.     Similar fixed and contingency fee arrangements, as well as similar indemnification, reimbursement, and contribution provisions, in other large Chapter 11 cases have been routinely approved and implemented by courts in this circuit and elsewhere.  *See, e.g.*, *In re Cottonwood Financial Ltd.*, No. 24-80035 (SWE) [Docket No. 253] (Bankr. N.D. Tex. May 3, 2024); *In re Ebix, Inc.*, Case No. 23-80004 (SWE) [Docket No. 290] (Bankr. N.D. Tex. Feb. 6, 2024); *In re Barretts Minerals Inc.*, Case No. 23-90794 (MI) [Docket No. 294] (Bankr. S.D. Tex. Nov. 19, 2023); *In re Benefytt Technologies, Inc.*, Case No. 23-90566 (CML) [Docket No. 318] (Bankr. S.D. Tex. July 24, 2023); *In re Instant Brands Acquisition Holdings Inc.*, Case No. 23-90716 (DRJ) [Docket No. 288] (Bankr. S.D. Tex. July. 23, 2023); *In re Compute North Holdings, Inc.*, Case No. 22-90273 (MI) [Docket No. 254] (Bankr. S.D. Tex. Dec. 5, 2022); *In re Pipeline Health Sys., LLC*, Case No. 22-90291 (MI) [Docket No. 525] (Bankr. S.D. Tex. Nov. 21, 2022); *In re Pioneer Energy Servs. Corp.*, Case No. 20-31425 (DRJ) [Docket No. 189] (Bankr. S.D. Tex. Apr. 7, 2020); *In re McDermott Int'l, Inc.*, No. 20-30336 (DRJ) [Docket No. 608] (Bankr. S.D. Tex. Jan. 22, 2020); *In re S. Foods Grp., LLC*, Case No. 19-36313 (DRJ) [Docket No. 470] (Bankr. S.D. Tex. Dec. 9, 2019).

34.     Notwithstanding approval of the Engagement Agreement under section 328(a) of the Bankruptcy Code, Stout Capital intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases,

4918-8678-4370, v. 3

subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein. Stout Capital's compensation and reimbursement of expenses payable under the Engagement Agreement shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

35.     In light of the foregoing, the retention of Stout Capital is in the best interest of the estates, the Debtors' creditors, and all parties in interest in these Chapter 11 Cases. Stout Capital has extensive experience in matters involving complex financial restructurings and an excellent reputation for services rendered in Chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Debtors have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Stout Capital in these Chapter 11 Cases on the terms described herein and in the Engagement Agreement.

## VIII.  **NOTICE**

36.     The Debtors will provide notice of this Application to the following parties or their counsel: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Senior Secured Lender; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

14

WHEREFORE, the Debtors request entry of an order, substantially in the form of the Order filed with this Application, granting the relief requested herein and granting such other relief as the Court deems just, proper, and equitable.

Respectfully submitted this 16th day of October, 2025.

**OKIN ADAMS BARTLETT CURRY LLP**

By:      /s/ *Matthew S. Okin*
      Matthew S. Okin
      Texas Bar No. 00784695
      Email: mokin@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      Email: roconnor@okinadams.com
      Kelley Killorin Edwards
      Texas Bar No. 24129017
      Email: kedwards@okinadams.com
      1113 Vine St., Suite 240
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 346.247.7158

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Application.

By:      /s/ *Matthew S. Okin*
      Matthew S. Okin

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2025, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

By:      /s/ *Matthew S. Okin*
      Matthew S. Okin