**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| RAZZOO'S, INC., *et al.*, | Case No. 25-90522 (ARP) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) EXTENDING TIME FOR PERFORMANCE
OF OBLIGATIONS ARISING UNDER UNEXPIRED NON-RESIDENTIAL
<u>REAL PROPERTY LEASES, AND (II) GRANTING RELATED RELIEF</u>**

> EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 11:00 A.M. (PREVAILING CENTRAL TIME) ON NOVEMBER 4, 2025.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 4, 2025 AT 11:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.
>
> HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Razzoo's, Inc. (9753) and Razzoo's Holdings, Inc. (9608). The Debtors' service address is 14131 Midway Road, Suite 750, Addison, Texas 75001.

Razzoo's, Inc., *et al*., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this *Emergency Motion for Entry of an Order (I) Extending Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property Leases, and (II) Granting Related Relief* (the "Motion"), and in support hereof, respectfully state as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Motion are sections 105, 365(d)(3), 503, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II. BACKGROUND

**A.     In General**

3. On October 1, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered by the Court under Case No. 25-90522.

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their properties as debtors in possession. No request has

been made for the appointment of a trustee or examiner. On October 14, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

5. Since 1991, Razzoo's has delivered a mix of Cajun culture, bold bayou cuisine, and an upbeat atmosphere to guests across multiple states. Bolstered by positive cash flow and customer enthusiasm for the concept, Razzoo's grew to six (6) total locations by 1996, fourteen (14) total locations by 2001, and reached a peak of twenty-four (24) locations across Texas, North Carolina and Oklahoma. For over thirty years, the Debtors have served soulful Cajun food to loyal guests and have demonstrated their ability to succeed in the casual dining space.

6. Various factors have led the Debtors to commence these Chapter 11 Cases. Most significantly, the Debtors have experienced a decline in sales in recent years due, in large part, to (i) shifts in spending habits following the COVID-19 pandemic and consumer preferences for more delivery, convenience and affordability; (ii) general market conditions and macro-economic factors like inflation and higher interest rates which have left many consumers opting to "trade down" to fast-casual or quick-service restaurants in order to stretch their budgets; and (iii) heavy media presence and discounting from competitors in the casual dining space.

7. As a result of the declining sales volumes, the Debtors' long-term lease obligations became increasingly burdensome on their liquidity situation with a sizeable portion of their monthly cash flow dedicated to rent. Despite the benefits realized from ongoing cost-saving initiatives implemented by their experienced management team, the Debtors' liquidity situation left them unable to service the ongoing lease obligations, ordinary course trade payables, and the prepetition secured debt obligations owed to First Horizon Bank ("First Horizon" or the "Prepetition Lender").

3

8. The Debtors have since closed four (4) underperforming locations and now operate twenty (20) free-standing and end cap locations. With a strong geographic foothold in the state of Texas, the Debtors believe that the Razzoo's brand remains well-positioned for additional expansion throughout the Southeast. The Debtors commenced these voluntary Chapter 11 Cases to effectuate the sale or financing transactions that will be necessary to reorganize their financial affairs, preserve thousands of jobs, and ensure that Razzoo's continues providing guests with the highest quality Cajun cuisine and hospitality.

9. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Philip Parsons in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day Declaration"), which has been filed with the Court and is incorporated herein by reference.

**B.     Debtors' Obligations under Unexpired Real Property Leases**

10. The Debtors are party to approximately twenty-two (22) leases (collectively, the "Leases") for non-residential real property located in Texas and North Carolina, each with distinct landlord counterparties (collectively, the "Landlords"). The Leases cover each of the Debtors' twenty (20) remaining restaurant locations as well as the Debtors' corporate office and a warehouse space. In total, the Debtors' obligations under the Leases are approximately $500,000 each month, which amounts become due and payable on first calendar day of each month. Though the Debtors recognize that each of these locations are, at present, necessary to support their business and current operations, the Leases represent a significant strain on the Debtors' operating liquidity.

4905-5676-4273, v. 3

11. On October 7, 2025, the Court entered its *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Modifying the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 60] (the "Interim Order"). As the Court is aware, the approved budget (the "Budget") attached to the Interim Order (and together with any Final Order entered by the Court, the "DIP Orders") does not contemplate payment of October 2025 rent owed to Landlords.

12. Consistent with the Budget and Interim Order, the Debtors assert that, because rent payments for October 2025 became due on October 1, 2025 under the terms of the Leases, such amounts should be deemed to accrue promptly at 12:01 a.m. on October 1, and should therefore constitute a prepetition obligation of the Debtors given the commencement of the Chapter 11 Cases shortly after the payment obligations accrued. Thus, notwithstanding the Petition Date of October 1, 2025, the Debtors assert that their October 2025 rent obligations had already accrued immediately prior to the commencement of these Chapter 11 Cases. However, to the extent that the Court finds that October rent remains a post-petition obligation, the Debtors request in the alternative that payment of October rent also be delayed by the Extension Period.

13. The Debtors believe their restructuring efforts will be strengthened if they are authorized, but not directed, to delay payment of rent payments for November 2025 (and October 2025, if applicable). A brief pause in rent payments totaling approximately $500,000 per month will give Debtors the opportunity to evaluate their options and develop a path forward. Although the Debtors remain optimistic about achieving an efficient and successful outcome in these proceedings, the path to maximizing value and emerging from these Chapter 11 Cases nevertheless requires careful consideration of the Debtors' operations.

5

14. As noted in the First Day Declaration, the Debtors intend to continue their analysis of the current Leases and store-level performance data to determine if rejection of additional Leases during the Chapter 11 Cases is necessary or appropriate to right-size their operations. The relief requested in this Motion will afford the Debtors the additional breathing room needed to make those determinations, negotiate with Landlords during the Extension Period, and conserve vital liquidity needed to sustain these Chapter 11 Cases.

### III. RELIEF REQUESTED

15. By this Motion, pursuant to sections 105(a) and 365(d)(3) of the Bankruptcy Code, the Debtors seek entry of an order, substantially in the form submitted herewith: (i) finding and concluding that the Debtors' obligations under the unexpired non-residential real property Leases (the "Lease Obligations") for the month of October 2025 (a) accrued prior to the commencement of these Chapter 11 Cases; and (b) constitute prepetition Lease Obligations of the Debtors; and (ii) ordering that all other Lease Obligations arising within sixty (60) calendar days after the Petition Date be extended through and including November 30, 2025 (the "Extension Period").

16. Accordingly, the Debtors request that they be: (i) authorized to commence performance of their post-petition Lease Obligations beginning December 1, 2025, and to make rent payments for the months of December 2025 and thereafter in the ordinary course of business during the Chapter 11 Cases; and (ii) authorized, but not directed, to make rent payments during the Extension Period for the month of November 2025, subject to the approved Budgets and the applicable DIP Orders. The Debtors are not presently seeking an extension beyond the 60-day period expressly permitted by section 365(d)(3) of the Bankruptcy Code.

## IV. BASIS FOR RELIEF REQUESTED

17. Section 365(d)(3) of the Bankruptcy Code authorizes the Court to extend the Debtors' obligations under their unexpired Leases during the first 60 days of these Chapter 11 Cases for cause. *See* 11 U.S.C. § 365(d)(3) ("The court may extend, for cause, the time for performance of any [of the Debtors'] obligation that arises within 60 days after the date of the order for relief."). Although the Bankruptcy Code does not define "cause," at least one court has considered whether there is a "specific cause" articulated by a debtor or "applicable legal precedent." *In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007).

18. The legislative history of section 365(d)(3) states that the "60-day grace period is intended to give the [debtor] time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases." *See* 130 Cong. Rec. S8894-95 (daily ed. June 29, 1984); *see also*, *Feld v. S & F Concession, Inc.* (*In re S & F Concession, Inc.*), 55. B.R. 689, 690 (Bankr. E.D. Pa. 1985). This Court has previously relied on the legislative history and Congressional intent behind section 363(d)(3) when deciding how to enforce the statute. *See, e.g.*, *In re Appletree Markets Inc.*, 139 B.R. 417, 419–21 (Bankr. S.D. Tex. 1992) (citing to the legislative history to determine the method of calculating and timing of post-petition rent payment); *In re Simbaki, Ltd.*, Case No. 13-36878 (MI), 2015 WL 1593888, at *5 (Bankr. S.D. Tex. Apr. 5, 2015) (same).

19. As set forth more fully below, the Debtors believe that cause exists to approve the Extension Period and other relief requested in this Motion in light of (i) general economic uncertainty and market conditions, and the specific, exigent circumstances resulting from the commencement of these Chapter 11 Cases, (ii) the substantial benefits to the Debtors' estates that would result from granting the relief requested, and (iii) the minimal amount of undue

4905-5676-4273, v. 3

prejudice to Landlords that would be caused by approving the Extension Period. Furthermore, the balance of equities under the circumstances of these Chapter 11 Cases heavily favors approving the Extension Period and granting relief under Bankruptcy Code section 365(d)(3).

A.   **Exigent Circumstances Constitute Cause**

20.   Various factors have undeniably resulted in exigent circumstances that constitute cause for approving the Extension Period. These circumstances include the detrimental impact on the Debtors' sales caused by, among other things, general market conditions and increased competition. As a consumer facing business, the Debtors anticipate that the filing of these Chapter 11 Cases could further impact guest traffic and negatively influence projected sales. As a result, the Lease Obligations presently constitute a heavy burden on the Debtors' estates and, without the emergency relief requested herein, such Lease Obligations could threaten the Debtors' ability to successfully operate in these Chapter 11 Cases.

   i.   *General Market Conditions*

21.   Most significantly, the Debtors have experienced a decline in sales due, in large part, to (i) shifts in consumer spending habits, shifting consumer preferences for convenience, affordability, delivery and innovation in part attributed to the impact of COVID-19 on consumer behavior, general market conditions, geopolitical and economic uncertainty; and (ii) heavy media presence and discounting from competitors in the casual dining space. Recently, macro-economic factors like inflation and higher interest rates have led to consumers opting to "trade down" to fast-casual or quick-service restaurants in order to stretch their budgets. Recognizing this, many key competitors have utilized aggressive marketing and value-oriented promotions which have negatively influenced Razzoo's guest traffic. Thus, the Debtors' sales have continued

8

to be unfavorable to forecasts in light of heavy competition among casual dining chains to attract consumers searching for best value to fit their strained budgets.

22. Moreover, as a Cajun-inspired brand, sales at Razzoo's fluctuate seasonally, and typically reach their peak during crawfish season. With the crawfish season starting earlier in 2025 than 2024, increased competition for crawfish drove retail selling process down and the Debtors experienced a decrease in sales this season relative to prior years. Despite the benefits realized from ongoing cost-saving initiative implemented by the Debtors' experienced management team, the Debtors' liquidity situation has left them unable to service their ongoing Lease Obligations.

    ii. *Burdensome Leases*

23. Razzoo's does not own any real estate. Rather, in the ordinary course of business, the Debtors entered into numerous long-term Leases for each of their store locations. While the amounts and terms vary by Lease, the Debtors' total monthly Lease Obligations due to the Landlords in the months leading up to the Petition Date was approximately $650,000. As a result of declining sales volumes, the Debtors' long-term Lease Obligations became increasingly burdensome on their liquidity situation with a sizable portion of their monthly cash flow dedicated to rent. Thus, in the months leading up to the Petition Date, the Debtors undertook a store-by-store analysis to identify underperforming locations and identify leases that were unprofitable or untenable on a long-term basis. Thereafter, in September 2025, the Debtors elected to exit certain unprofitable leases prior to the Petition Date and closed their store locations in Pasadena (TX), Corpus Christi (TX), and Oklahoma City (OK).

24. In addition to other cost savings realized by the closures, the Debtors' recurring monthly rent obligations were reduced by approximately $110,000. The Debtors believe the

additional breathing room to be afforded by the Extension Period requested in this Motion will allow Debtors to continue their ongoing performance analysis to determine if rejection or renegotiation of additional Leases during the Chapter 11 Cases is necessary or appropriate.

B.   **The Benefit to the Debtors' Estates Constitutes Cause**

25.   The Debtors stand to derive significant benefit from a temporary extension of their Lease Obligations during the Extension Period. After factoring in recent store closures, the current Lease Obligations under the remaining Leases represent a cost to the Debtors' estates of approximately $500,000 per month. Briefly relieving the Debtors of a large percentage of their monthly operating expenses by extending any requirement for the Debtors to commence performance of these Lease Obligations to the start of December 2025 will allow the Debtors to build and conserve much needed capital and maintain operational flexibility.

26.   The Extension Period will also give the Debtors the time and reprieve necessary to thoughtfully engage in negotiations with Landlords regarding current Lease Obligations, negotiate for better terms, and to determine whether assumption or rejection of the applicable Leases is appropriate. *See In re DWE Screw Prods., Inc.*, 157 B.R. 326, 329 (Bankr. N.D. Ohio 1993) (holding that "attempts at negotiating settlement constitute 'cause' for extending the time for performance an additional sixty (60) days" under section 365(d)(3)). Such negotiations will ultimately benefit the Debtors' estates by permitting the Debtors to make long-term decisions based on a holistic review of their Lease portfolio, rather than forcing short-term value calculations based on burdensome Lease Obligations.

27.   Ultimately, suspending the Lease Obligations through the Extension Period will better position the Debtors for a successful sale process and subsequent emergence from chapter 11, whereas forcing the Debtors to continue paying Lease Obligations for the months of October

and November 2025 will compromise the Debtors' short-term liquidity and ability to analyze their current Leases in depth. Accordingly, the benefit to the estates is sufficient cause to warrant approval of the Extension Period under section 365(d)(3).

C.     **Landlords Are Not Unduly Prejudiced**

28.     Under the current circumstances, it has become somewhat common practice for tenants to seek deferment of rental obligations through negotiations or self-help in order to mitigate the cost of real estate. The Debtors recognize that this practice may impose certain temporary hardships on Landlords. Nonetheless, the Debtors believe in this instance that extending their requirement to commence performance of the Lease Obligations until the expiration of the Extension Period does not represent an overly burdensome harm to Landlords.

29.     Landlords may pursue administrative expense claims for the extended Lease Obligations pursuant to section 365(d)(3). *See CIT Commc'ns Fin. Corp. v. Midway Airlines Corp.* (*In re Midway Airlines Corp.*), 406 F.3d 229, 235 (4th Cir. 2005) ("A lessor is entitled to recover all payments due under the lease . . . as an administrative expense, but the lessor must still assert its administrative expense claim under § 503(b)[.]"); *see also In re Simbaki, Ltd.*, 2015 Bankr. LEXIS 1142, at *7–10 (Bankr. S.D. Tex. Apr. 6, 2015) ("The Court adopts the *Midway* approach and finds that [the lessor's] claim for December rent is an administrative claim under § 503(b) independent of § 503(b)(1)(A)."); 3 Collier on Bankruptcy ¶ 365.04[1][b] (Richard Levin & Henry J. Sommer, eds., 16th ed. 2020) (noting that *Midway* "seems warranted" on this point); *In re Circuit City Stores, Inc.*, 447 B.R. 475, 508 (Bankr. E.D. Va. 2009). Courts have discretion as to the application of section 365(d)(3) and the timing in which the Debtors must pay post-petition rent in the event of an extension. Indeed, one court has noted that:

> Section 365(d)(3) of the Bankruptcy Code requires the Debtors to timely perform all their obligations under their Leases. *Timely*

> could mean immediately, as argued by certain Lessors in this case. *Timely* could mean whatever period for timely performance is provided by the lease terms, as the Debtors argue. *Timely* could mean that payment of these administrative claims should be made with all other administrative claims—upon the effective date of the plan.

*In re Circuit City Stores, Inc.*, 447 B.R. at 509 (emphasis in original). Under "dire financial circumstances . . . the Court has discretion under the Bankruptcy Code and [applicable bankruptcy case law] . . . to decline to order immediate payment . . . ." *Id.* at 511 (internal citation omitted). If cause exists, as it does here, the payment of claims for post-petition rent as late as the effective date is considered "timely" under section 365(d)(3). *See id.* at 512.

30. Additionally, the Debtors' post-petition cash flow forecast presently projects that they will have sufficient liquidity to pay for operating costs from and after the Extension Period, which will include the full amount of Lease Obligations for any Leases not rejected or otherwise consensually modified with Landlords. The Extension Period, therefore, does not result in any significant risk to Lease counterparties for Lease Obligations arising during the Extension Period and instead merely changes the timing of payment as expressly permitted by section 365(d)(3) of the Bankruptcy Code. Finally, extending Lease Obligations through the Extension Period would be consistent with the prior decisions of this Court and courts in other districts. *See e.g.*, *In re J.C. Penney Company, Inc.*, Case No. 20-20182 (DRJ) [Docket No. 721] (Bankr. S.D. Tex. June 11, 2020); *see also, In re Circuit City Stores, Inc.*, 447 B.R. at 509; *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 607 (Bankr. D. Del. 2008) ("An administrative expense claim under section 503(b)(1) for post-petition rent, however, need not be timely paid under section 365(d)(3). Rather, the timing of the payment is in the Court's discretion."), *aff'd*, 610 F.3d 812 (3d Cir. 2010); *In re New Almacs, Inc.*, 196 B.R. 244, 250 (Bankr. N.D.N.Y. 1996) (finding that

the court has "a certain amount of discretion with respect to the timing of the payments in these situations").

**D.     Balance of Equities Favors Deferring Lease Obligations**

31.     In light of the benefit to the Debtors' estates and the limited prejudice, if any, to the Landlords during the Extension Period, the balance of equities favors approving the Extension Period requested by the Debtors.

32.     Approving the Extension Period is also consistent with public interest under the circumstances. Forcing the Debtors to immediately pay Lease Obligations only serves to increase the pressure on the Debtors by straining their already limited resources. This, in turn, further impairs the Debtors' ability to closely analyze their Leases. Such incentive will likely cause more harm under the circumstances by forcing Debtors to prematurely reject Leases associated marginally-performing store locations, thus leaving Landlords without a tenant and employees without stable employment.

33.     In light of the benefits to the estates, the fact that many of the Debtors' stakeholders will be in the same position as the Landlords (or worse), and the public interest at hand, the Debtors believe that the balance of equities weighs heavily in favor of approving the Extension Period and other relief requested in this Motion. Placing the long-term viability of the Debtors at risk for the short-term revenues of Landlords will likely result in significant harm to a larger group of stakeholders who themselves have also incurred significant hardship in connection with the commencement of these Chapter 11 Cases. Accordingly, the Court should find sufficient cause to grant the Extension Period under section 365(d)(3).

**V.     REQUEST FOR WAIVER OF STAY**

34.     To the extent that the relief sought in this Motion constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the fourteen-day stay under

13

Bankruptcy Rule 6004(h). As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of the estates.

## VI.  RESERVATION OF RIGHTS

35. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of an prepetition claim against either Debtor; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (iv) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (v) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## VII.  BASIS FOR EMERGENCY RELIEF

36. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) because October rent became due on October 1, 2025, before the Petition was filed and November rent will come due prior to the emergency hearing set for November 4, 2025. The Debtors have an immediate need to resolve this matter and give the Landlords information as quickly as possible. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VIII.  NOTICE

37. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## IX.  PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) granting the relief requested in this Motion; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

[*Remainder of Page Intentionally Left Blank*]

4905-5676-4273, v. 3

Respectfully submitted on the 16th day of October, 2025.

**OKIN ADAMS BARTLETT CURRY LLP**

By:     /s/ *Matthew S. Okin*
    Matthew S. Okin
    Texas Bar No. 00784695
    Email: mokin@okinadams.com
    Ryan A. O'Connor
    Texas Bar No. 24098190
    Email: roconnor@okinadams.com
    Kelley Killorin Edwards
    Texas Bar No. 24129017
    Email: kedwards@okinadams.com
    1113 Vine St., Suite 240
    Houston, Texas 77002
    Tel: 713.228.4100
    Fax: 346.247.7158

**PROPOSED ATTORNEYS FOR THE DEBTORS**

### CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Motion.

By:     /s/ *Matthew S. Okin*
    Matthew S. Okin

### CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, a true and correct copy of the foregoing Notice was served via the Court's CM/ECF system to all parties consenting to service through the same.

By:     /s/ *Matthew S. Okin*
    Matthew S. Okin

4905-5676-4273, v. 3