United States Bankruptcy Court
Southern District of Texas

**ENTERED**
November 04, 2025
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RAZZOO'S, INC., *et al.*, | Case No. 25-90522 (ARP) |
| Debtors.[1] | (Jointly Administered) |

### ORDER (I) APPROVING (A) BIDDING PROCEDURES; (B) ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (C) STALKING HORSE PROCEDURES AND BID PROTECTIONS; (II) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING DATE; (III) APPROVING FORMS OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF
### (Relates to Docket No. 69)

Upon the motion (the "Sale Motion")[2] of Razzoo's, Inc., *et al.* (the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), seeking entry of an order (this "Bidding Procedures Order") (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets; (b) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (c) approving procedures related to the designation of a stalking horse purchaser; (d) scheduling a Bid Deadline, Auction date and Sale Hearing; (e) approving the forms and manner of notice thereof; and (f)

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Razzoo's, Inc. (9753) and Razzoo's Holdings, Inc. (9608).  The Debtors' service address is 14131 Midway Road, Suite 750, Addison, Texas 75001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures attached as Exhibit 1 to this Bidding Procedures Order, as applicable.

granting related relief; and (ii) entry of an order (the "Sale Order") after the Sale Hearing (a) authorizing the sale of the Purchased Assets to a Stalking Horse Purchaser or other Winning Bidder free and clear of Encumbrances, except as provided by the relevant Asset Purchase Agreement; (b) authorizing the Debtors to assume and assign any designated Assigned Contracts and Assigned Lease; and (c) granting related relief; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Sale Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Sale Motion being adequate and appropriate under the particular circumstances; and a hearing (the "Bidding Procedures Hearing") having been held to consider the relief requested in the Sale Motion with respect approval of the Bidding Procedures and entry of this Bidding Procedures Order; and upon consideration of the record of the Bidding Procedures Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, therefore;

**IT IS FOUND AND DETERMINED THAT:**

A.      At the Bidding Procedures Hearing and in the Sale Motion, the Debtors articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief set forth in this Bidding Procedures Order relating to the bidding process, including approval of (1) the bidding procedures attached hereto as **Exhibit 1** (the "Bidding

2

Procedures"), (2) the procedures described below for the determination of the amounts necessary to cure defaults under any Assigned Contracts or Assigned Leases (the "Cure Amounts") so as to permit their assumption and assignment by the Debtors to the Winning Bidder under section 365 of the Bankruptcy Code, (3) the procedures for designation of a Stalking Horse Purchaser and authorization for the Debtors to offer Bid Protections in connection with a Stalking Horse Agreement, and (4) the forms of the Sale Notice and Cure Notice proposed by the Debtors.

B.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Sale Motion, including approval of one or more Sale(s), the transfer of the Purchased Assets, and the assumption and assignment of Assigned Contracts and Assigned Leases to the Winning Bidder free and clear of all Encumbrances and other interests pursuant to sections 363(f) and 365 of the Bankruptcy Code.

C.      The Bidding Procedures substantially in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale(s) of the Purchased Assets.

D.      The Bid Protections (if any Stalking Horse Purchaser is designated), as limited by the approval granted in this Bidding Procedures Order, to be paid to a Stalking Horse Purchaser are:  (1) are actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by any Stalking Horse Purchaser; (3) fair, reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments and accommodations of a Stalking Horse Purchaser that would be made for the benefit of the Debtors' estates, the condition of the Purchased Assets, and the efforts that have

been and will be expended by a Stalking Horse Purchaser; and (4) necessary to induce a Stalking Horse Purchaser to pursue a Sale and to be bound by a Stalking Horse Agreement.  Accordingly, the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

E.      The Debtors' proposed Sale Notice is appropriate.  Service of the Sale Notice as provided for in the Sale Motion and this Bidding Procedures Order is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing, and no other or further notice is required.

F.      The Debtors' proposed Cure Notice is adequate and reasonably designed to provide notice to contract counterparties of the Debtors' executory contracts and unexpired leases that may be assumed and assigned to a Winning Bidder in connection with a Sale.

G.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

H.      To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.      All objections to the relief requested in the Sale Motion relating to the Bidding Procedures (and all reservations of rights included in any such objections) that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Bidding Procedures Order.

**Bidding Procedures**

2.      The Bidding Procedures attached hereto as **Exhibit 1** are APPROVED and fully incorporated into this Bidding Procedures Order by reference. The failure to specifically include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety. The Bidding Procedures shall govern all Bids relating to the Sale of the Debtors' Assets. Any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures, including incurring and paying costs and expenses, in accordance with the applicable DIP Orders and corresponding approved budget(s).

3.      The Bid Deadline shall be December 8, 2025 at 5:00 p.m. (prevailing Central Time). Subject to the Milestones set forth in the DIP Orders, the Debtors are authorized, in their discretion and without further order of the Court, to extend the Bid Deadline in consultation with the Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 Cases and the Senior Secured Lender, if applicable.  For the avoidance of doubt, all consultation rights set forth in the Bidding Procedures and this Bidding Procedures Order are expressly subject to the Credit Bid Notification provisions set forth in the Bidding Procedures. If the Senior Secured Lender or any other Secured Party submits a Credit Bid Notification, it shall not be entitled to any consent or consultation rights in connection with the Bidding Procedures unless such Credit Bid Notification is subsequently revoked.

4.      All Bids shall be submitted in cash; *provided*, *however*, that any Potential Bidder who submits a credit Bid shall only be required to include within such Bids the cash components expressly provided for in the Bidding Procedures.

5.      Following the receipt of all timely Bids, the Debtors shall have the right, in consultation with the Committee and the Senior Secured Lender (if applicable) to determine whether a Bid is a Qualified Bid in accordance with the provisions governing Qualified Bids in the Bidding Procedures. The Debtors shall notify each Qualified Bidder and the Committee promptly upon a determination that a Bid constitutes a Qualified Bid.

6.      The Good Faith Deposits of all Qualified Bidders shall be held in escrow by the Debtors or their designated agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures or any applicable escrow agreement.

7.      The auction for the Debtors' Assets (the "<u>Auction</u>") shall be held at 10:00 a.m. (prevailing Central Time) on December 12, 2025.  The Debtors may permit parties to attend in person or by Zoom video conference pursuant to instructions to be provided by the Debtors to parties entitled to attend the Auction at a later date.

8.      If an Auction is conducted as provided for in the Bidding Procedures, then each Qualified Bidder attending shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code, with respect to the bidding or the Sale. The Auction shall be recorded or transcribed.

9.      Subject to the terms of the Bidding Procedures, the Debtors shall determine, in consultation with the Committee and the Senior Secured Lender (if applicable), which Qualified Bid is the highest or otherwise best offer for the Purchased Assets, giving effect to any additional

liabilities to be assumed by the relevant Qualified Bidder and any additional costs which may be imposed on the Debtors. For purposes of valuing Qualified Bids and determining the Winning Bid, the full face amount of any credit bid shall be deemed to have the same value as the equivalent amount of cash. The Debtors shall promptly notify the Committee and the Senior Secured Lender (if applicable) upon the selection of the Winning Bid and Back-Up Bid, if any.

10.     As soon as reasonably practicable after the conclusion of the Auction, but no later than the one (1) business day following the conclusion of the Auction, the Debtors shall file a Winning Bidder Notice containing the identity of the Winning Bidder, the Back-Up Bidder, if any, and the respective amounts of such Bids.

11.     Objections, if any, to the manner in which the Auction was conducted and selection of the Winning Bidder or Back-Up Bidder, if any (an "Auction Objection"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; and (c) be filed with the Clerk of the Court no later than December 15, 2025 at 5:00 p.m. (prevailing Central Time) (the "Auction Objection Deadline"). Failure to timely or appropriately file an Auction Objection by the Auction Objection Deadline shall be deemed to be consent to the Debtors' selection of the Winning Bidder or Back-Up Bidder, as applicable, and the manner in which the Auction was conducted.

12.     Objections, if any, to the specific identity of, and adequate assurance of future performance provided by, the Winning Bidder (an "Adequate Assurance Objection"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Adequate Assurance Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; and (c) be filed with the Clerk of the Court no later than December 16, 2025 at 5:00 p.m. (prevailing Central Time) (the "Adequate Assurance Objection Deadline"). Failure to timely or appropriately file an

Adequate Assurance Objection by the Adequate Assurance Objection Deadline shall bar contract counterparties from objecting to assumption by the Debtors and assignment to the Winning Bidder or Back-Up Bidder, if necessary, of the relevant Assigned Contract and Assigned Leases on grounds of adequate assurance of future performance.

13.     The Sale Hearing shall be held before the Court on December 19, 2025 at 9:00 a.m. (prevailing Central Time). The Sale Hearing may be adjourned by the Debtors, in consultation with the Committee, without further notice to creditors or parties in interest other than by announcement in open Court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

14.     The Winning Bidder shall appear at the Sale Hearing and be prepared to testify, if necessary, in support of the Winning Bid and the Winning Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all Assigned Contracts and Assigned Leases to be assumed and assigned as part of the proposed Sale.

**<u>Stalking Horse Provisions</u>**

15.     The Debtors are authorized, but not directed, (i) to select bidder to act as a Stalking Horse Purchaser; (ii) to enter into a Stalking Horse Agreement with such Stalking Horse Purchaser; and (iii) in connection with any such Stalking Horse Agreement, (a) provide a breakup fee not to exceed three percent (3%) of the applicable purchase price (the "<u>Breakup Fee</u>"); (b) agree to reimburse reasonable and documented out-of-pocket fees and expenses not to exceed $50,000 (the "<u>Expense Reimbursement</u>," and together with the Breakup Fee, the "<u>Bid Protections</u>").

16.     If the Debtors select a Stalking Horse Purchaser on or before November 28, 2025 (the "<u>Stalking Horse Designation Deadline</u>"), the Debtors shall promptly file with the Court a notice that contains information regarding the Stalking Horse Purchaser and the Stalking Horse

Bid, including any Bid Protections, and attaches the proposed Stalking Horse Agreement (the "Stalking Horse Selection Notice"). The Debtors are authorized, without further order of the Court, to extend the Stalking Horse Designation Deadline in consultation with the Committee and the Senior Secured Lender (if applicable).

17.     Parties in interest may file an objection (a "Stalking Horse Objection") to the designation of the Stalking Horse Purchaser or any of the terms of the Stalking Horse Agreement, including to any of the proposed Bid Protections, no later than five (5) days after service of the Stalking Horse Selection Notice (the "Stalking Horse Objection Deadline"). If a timely Stalking Horse Objection is filed and served in accordance with this Bidding Procedures Order, the proposed designation of the Stalking Horse Purchaser and the Bid Protections contemplated by such Stalking Horse Agreement will not be deemed approved, and the Bid Protections may not be paid, until either the Stalking Horse Objection is resolved by agreement of the objecting party, the Debtors and the Stalking Horse Purchaser, or otherwise by further order of the Court. If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Bid in accordance with the Bidding Procedures and this Bidding Procedures Order, the Bid Protections contemplated by such Stalking Horse Bid shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

18.     Subject to the foregoing paragraph, the Bid Protections set forth in any Stalking Horse Selection Notice and Stalking Horse Bid are deemed approved. The Debtors' obligation to pay the Bid Protections shall constitute, pursuant to sections 503 and 507 of the Bankruptcy Code, an administrative expense claim against each of the Debtors' bankruptcy estates. The Bid Protections payable pursuant to the terms of the Stalking Horse Agreement shall be payable

without further order of this Court upon the closing of the Sale Transaction to a Winning Bidder other than the Stalking Horse Purchaser.

**Sale Notice Procedures**

19.     The Sale Notice, substantially in the form attached to the Sale Motion, is hereby approved.  The Sale Notice is reasonably calculated to provide sufficient notice to all parties in interest of the Debtors' intent to consummate a Sale with the Winning Bidder and constitutes adequate notice of the Sale.  For the avoidance of doubt, the following procedures as set forth in the Sale Notice are hereby approved:

(i)     The Debtors shall serve the Sale Notice within five (5) business days after the entry of the Bidding Procedures Order upon all parties on the Debtors' Master Service List, and, for the avoidance of doubt: (a) counsel to the Senior Secured Lender; (b) counsel to any statutory committee appointed in the Chapter 11 Cases; (c) the United States Trustee for the Southern District of Texas; (d) all other parties known to the Debtors who have or may have asserted liens, claims, encumbrances, or interests in or against any of the Assets; (e) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (f) all of the Debtors' creditors as required by Bankruptcy Rule 2002(a)(2); (g) federal, state, and local taxing authorities; (h) all of the counterparties to the executory contracts and unexpired leases as set forth on Schedule 1 to the Cure Notice (defined below) as may be amended, modified, or supplemented; (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (j) all parties known to have expressed an interest in a transaction with respect to the Assets.

(ii)     Any objections to the relief requested in this Sale Motion as relates to the Sale of the Assets outside the ordinary course of business (a "Sale Objection") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; and (c) be filed with the Clerk of the Court no later than 5:00 p.m. (prevailing Central Time) on December 8, 2025 (the "Sale Objection Deadline")

(iii)     The failure of any person or entity to file a Sale Objection by the Sale Objection Deadline shall be deemed a consent to the Sale of the Assets outside the ordinary course of business. Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of (a) any objection to the Sale Motion; (b) the Sale of the Assets free and clear of an liens, claims, and encumbrances;

10

and (c) the Debtors' consummation and performance of an Asset Purchase Agreement with the Winning Bidder.

(iv)     If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

### Cure Notice Procedures

20.     The Cure Notice, substantially in the form attached to the Sale Motion, is hereby approved. The Cure Notice to be provided and the method of service constitutes good, proper, and adequate notice, and is reasonably calculated to provide sufficient notice to all contract counterparties of: (i) the Debtors' intent to assume and assign certain executory contracts and unexpired leases to the Winning Bidder, and (ii) the proposed Cure Amount associated with such assumption and assignment. For the avoidance of doubt, the following procedures as set forth in the Cure Notice are hereby approved:

(i)     The Debtors shall serve the Cure Notice no later than five (5) business days after entry of the Bidding Procedures Order upon any counterparties to the Debtors' executory contracts and unexpired leases that may potentially be assumed and assigned as Assigned Contracts and Assigned Leases, and as set forth in Schedule 1 attached to the Cure Notice. The Cure Notice shall provide the counterparties to such executory contracts and unexpired leases with notice of the Cure Amount that the Debtors believe must be cured upon assumption and assignment to the Winning Bidder as required under Bankruptcy Code section 365.

(ii)    Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice or to the Cure Amounts set forth in the Cure Notice (a "Cure Objection"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Cure Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) and be filed with the Clerk of the Court no later than December 8, 2025 at 5:00 p.m. (prevailing Central Time), or such other date as determined by the Court and set forth in the Bidding Procedures Order (the "Cure Objection Deadline").

(iii)   If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice fails to file a Cure Objection by the Cure Objection Deadline, then the Cure Amount set forth in the Cure Notice will be binding upon the contract

counterparty, and all parties in interest, for all purposes in the Chapter 11 Cases and otherwise. All such counterparties to those executory contracts and unexpired leases on Schedule 1 of the Cure Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases, and the applicable Cure Amounts shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults thereunder if the applicable Stalking Horse Purchaser or Winning Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtors and assigned to it as Assigned Contracts or Assigned Leases; (b) be deemed to have consented to the assumption and assignment if the applicable Stalking Horse Purchaser or other Winning Bidder designates such contract or lease as an Assigned Contract or Assigned Lease; and (c) be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Purchaser, or other Winning Bidder, as applicable, that any additional amounts are due, other defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment.

(iv)     In the event that the Debtors and the counterparty cannot resolve the Cure Objection, the Debtors shall segregate the disputed Cure Amount (each, a "Disputed Cure Amount") pending the resolution of such dispute by the Court or mutual agreement of the parties; *provided*, *however*, that the Debtors shall not be required to segregate any Disputed Cure Amount if the applicable Stalking Horse Agreement or Asset Purchase Agreement provides for payment of Cure Amounts by the Stalking Horse Purchaser or Winning Bidder (and not by the Debtors).

(v)      If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice timely files a Cure Objection, whether based on Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Cure Objection prior to the commencement of the Sale Hearing, such Cure Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

(vi)     If at any time after the Cure Notice is served (but prior to the closing of a Sale pursuant to any Stalking Horse Agreement or other Asset Purchase Agreement) the Debtors: (a) amend Schedule 1 to the Cure Notice and include additional executory contracts or unexpired leases; or (b) receive notice from the Stalking Horse Purchaser or Winning Bidder that additional prepetition executory contracts and or unexpired leases are to be designated as Assigned Contracts or Assigned Leases under the applicable Stalking Horse Agreement or other Asset Purchase Agreement, then the Debtors shall serve a supplemental cure notice (a "Supplemental Cure Notice") by first class mail, facsimile, electronic transmission, or overnight mail on the counterparty (and its attorney, if known) to each such contract (a "Previously Omitted Contract") within two (2) business days of the amendment to the Cure Notice, or the receipt of notice of designation as an Assigned Contract or Assigned Lease. Each Supplemental Cure Notice shall set

forth the following: (i) the name and address of the contract counterparty; (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and the Stalking Horse Purchaser or Winning Bidder to withdraw such request for assumption and assignment of the Assigned Contract or Assigned Lease prior to closing); (iii) identification of the Assigned Contract or Assigned Lease; and (iv) the Cure Amount, if any.

(vii)    Unless the contract counterparty to the Previously Omitted Contract properly files a Cure Objection to the Supplemental Cure Notice within fourteen (14) days of service of the Supplemental Cure Notice, the Debtors shall obtain an order of the Court fixing the Cure Amounts and approving the assumption and assignment of the Previously Omitted Contract as an Assigned Contract or Assigned Lease. If a Cure Objection is timely filed and served with respect to a Previously Omitted Contract, and the relevant parties are unable to resolve the Cure Objection, such Cure Objection will be adjudicated at the Sale Hearing or, if the Sale Hearing date has passed, at such other date and time as may be fixed by the Court.

(viii)    For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 of the Cure Notice shall not obligate the Debtors to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtors, Stalking Horse Purchaser, or other Winning Bidder to establish or modify the list of Assigned Contracts and Assigned Leases, including to remove any contracts or leases from such list, are expressly reserved. Only those executory contracts and unexpired leases designated as Assigned Contracts or Assigned Leases at closing will be assumed and assigned to the Stalking Horse Purchaser or other Winning Bidder, if applicable.

21.    The Winning Bidder may designate additional contracts and leases for assumption and assignment at any time up until the earlier of: (i) any designation deadline set forth in the applicable Asset Purchase Agreement, or (ii) the date of the closing of the Sale.

22.    If an executory contract or unexpired lease is assumed and assigned pursuant to the Sale Order or other order of the Court, and unless otherwise agreed by the Debtors, Winning Bidder and a counterparty to an Assigned Contract or Assigned Lease, the counterparty to such Assigned Contract or Assigned Lease shall receive the applicable Cure Amount, if any (except for Disputed Cure Amounts), no later than five (5) business days following the closing of the Sale, with payment to be made pursuant to the terms of the Winning Bidder's Asset Purchase Agreement. Except to the extent otherwise provided in the Winning Bidder's Asset Purchase Agreement, the Debtors

and the Debtors' estates shall be relieved of all liability accruing or arising under or in connection with the Assigned Contracts or Assigned Leases after the assumption and assignment thereof pursuant to section 365(k) of the Bankruptcy Code.

23.     Notwithstanding any provision in this Bidding Procedures Order or the Bidding Procedures to the contrary, this Bidding Procedures Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied the requirements of section 365 of the Bankruptcy Code for any particular Assigned Contract or Assigned Lease, including those relating to the Cure Amounts or the provision of adequate assurance of future performance. No Assigned Contract or Assigned Lease shall be deemed assumed or assigned until the later of: (a) the date the Court has entered an order authorizing the assumption and assignment of such Assigned Contract or Assigned Lease, (b) the date the Sale is closed, or (c) the date the applicable Cure Amount is paid. The Winning Bidder shall have no rights in and to any particular Assigned Contract or Assigned Lease until such time as the applicable Assigned Contract or Assigned Lease is assumed and assigned to the Winning Bidder.

24.     The inclusion of a contract or lease and related Cure Amount on the Cure Notice or a Supplemental Cure Notice, if any, shall not constitute or be deemed to be a determination or admission by the Debtors, a Winning Bidder, or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Amount constitutes a claim against the Debtors in such amount (all rights with respect thereto being expressly reserved). The Debtors reserve all of rights, claims and causes of action with respect to each contract or lease listed on the Cure Notice or any Supplemental Cure Notice.

**Miscellaneous Provisions**

25.     Prior to service, the Debtors may make final, non-substantive edits to the Bidding Procedures, Sale Notice, and Cure Notice consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding relevant dates and deadlines, and adding any revisions announced on the record at the Bidding Procedures Hearing, each of which shall be deemed approved by this Bidding Procedures Order without further notice or hearing.

26.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27.     In the event that there is a conflict between this Bidding Procedures Order or the Bidding Procedures, this Bidding Procedures Order shall control and govern.  In the event that there is a conflict between the Bidding Procedures and any Asset Purchase Agreement, the Bidding Procedures shall control and govern.

28.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable.

30.     In the event of any dispute regarding the Sale process outlined in the Bidding Procedures or this Bidding Procedures Order among the Debtors, the Senior Secured Lender and the Committee, if any: (i) any such party may seek an emergency hearing requesting that the Court resolve such dispute; and (ii) the other parties shall consent to such request for an emergency hearing.

31.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Bidding Procedures Order.

Signed: November 04, 2025

Alfredo R Pérez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Bidding Procedures**



**RAZZOO'S, INC.,** *et al.*

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale (the "Sale") of certain tangible and intangible assets (the "Assets") of Razzoo's, Inc., *et al.* (collectively, the "Debtors," and in their capacity as owners of the Assets, the "Seller"), in connection with the Debtors' jointly administered chapter 11 cases the ("Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), lead Case No. 25-90522.

On November 4, 2025, the Bankruptcy Court entered an Order (the "Bidding Procedures Order"), which, among other things, sets forth the process by which the Debtors are authorized to conduct a marketing and auction process for the Sale of Assets through one or more transactions (each, a "Sale Transaction"), which shall be effectuated pursuant to section 363 of the Bankruptcy Code, and which shall be free and clear of all liens, claims, encumbrances and other interests (collectively, the "Encumbrances"), other than those Encumbrances permitted by a Stalking Horse Agreement or Asset Purchase Agreement (as defined below), on an AS-IS, WHERE-IS WITH ALL FAULTS BASIS.

Subject to the remaining terms of these Bidding Procedures, a Potential Bidder (defined below) should bid on the Assets as a collective whole. Any Bid for less than all of the Assets, even if such Bid is the highest or otherwise best Bid for such Assets, is subject to higher or otherwise better Bids on the Assets as a collective whole. Similarly, any Bid on all of the Assets is subject to Bids on less than all of the Assets, or combinations thereof, that are higher or otherwise better Bids in the aggregate.

## KEY DATES AND DEADLINES

| Date and Time[1] | Applicable Deadline |
|---|---|
| November 28, 2025 | Stalking Horse Designation Deadline |
| December 8, 2025 at 5:00 p.m. | Sale Objection Deadline |
| December 8, 2025 at 5:00 p.m. | Contract Objection Deadline |
| December 8, 2025 at 5:00 p.m. | Bid Deadline |
| December 10, 2025 at 10:00 a.m. | Qualified Bids Determined |
| December 12, 2025 at 10:00 a.m. | Auction Date |
| December 15, 2025 at 5:00 p.m. | Auction Objection Deadline |
| December 16, 2025 at 5:00 p.m. | Adequate Assurance Objection Deadline |
| December [●], 2025 at [●] | Sale Hearing |

---

[1] All times are prevailing Central Time.

## STALKING HORSE PURCHASER AND BID PROTECTIONS

1.      The Debtors have been authorized, but are not obligated, in an exercise of their business judgment and in consultation with the Committee, to: (i) designate one or more bidders to act as qualified stalking horse bidders in connection with the Sale (each, a "Stalking Horse Purchaser," and the bid of a Stalking Horse Purchaser a "Stalking Horse Bid"), and enter into purchase agreements with respect to a Sale with such Stalking Horse Purchaser(s) (each, a "Stalking Horse Agreement") and (ii) in connection with any Stalking Horse Agreement with a Stalking Horse Purchaser, (a) provide a breakup fee not to exceed three percent (3%) of the Purchase Price (the "Breakup Fee"); (b) agree to reimburse reasonable and documented out-of-pocket fees and expenses not to exceed $50,000 (the "Expense Reimbursement"); and (c) agree to provide minimum overbid protections as approved by the Bankruptcy Court (together with the Breakup Fee and Expense Reimbursement, the "Bid Protections").  For the avoidance of doubt, any Secured Party (defined below) designated as a Stalking Horse Purchaser pursuant to a credit Bid shall not be entitled to Expense Reimbursement in its Bid Protections if the Debtors are otherwise obligated to pay such Secured Party's professional fee invoices pursuant to the applicable DIP Orders.

2.      If applicable, the Debtors will file a notice in the Chapter 11 Cases containing the identity of each such Stalking Horse Purchaser, the Bid Protections (including the amount and calculation thereof) and Stalking Horse Agreement as outlined in the Bidding Procedures Order (the "Stalking Horse Selection Notice").  Parties in interest may file an objection (a "Stalking Horse Objection") to the designation of the Stalking Horse Purchaser or any of the terms of the Stalking Horse Agreement, including to any of the proposed Bid Protections, within five (5) days after service of the Stalking Horse Selection Notice (the "Stalking Horse Objection Deadline").  If a timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures Order, the proposed designation of the Stalking Horse Purchaser and the Bid Protections under such Stalking Horse Agreement will not be deemed approved, and such Bid Protections may not be paid pursuant to the Bidding Procedures Order, until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors (in consultation with the Committee) or by further order of the Bankruptcy Court.  If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Bid in accordance with these Bidding Procedures and the Bidding Procedures Order, the Bid Protections contemplated by such Stalking Horse Bid shall be deemed approved without further order of the Bankruptcy Court upon the expiration of the Stalking Horse Objection Deadline.

3.      The Debtors have agreed that their obligation to pay the Bid Protections pursuant to the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement, and, to the extent owed by the Debtors, constitute an administrative expense claim under sections 503(b) and 507 of the Bankruptcy Code against the Debtors, and payable in accordance with the terms and conditions of the Bidding Procedures Order.

## ASSETS TO BE SOLD AND ASSET PURCHASE AGREEMENT

4.      The Debtors seek to consummate a Sale of their Assets and will consider bids (the "Bids") to acquire the Purchased Assets as a going-concern to the extent that the consummation of such Sale Transaction maximizes value for stakeholders. The Debtors may also, in their discretion, choose to accept Bids from Potential Bidders on certain Purchased Assets constituting

less than all of the Assets available for Sale (*i.e*, a "Lot Bid") to the extent the Debtors believe one or more of such Sale Transactions may maximize value for stakeholders and can be accomplished efficiently; *provided*, *however*, (i) the Potential Bidder should notify the Debtors' Investment Banker of its intent to submit such a Bid as soon as reasonably practicable prior to the Bid Deadline and identify the specific Purchased Assets to be included in the Lot Bid; and (ii) the Potential Bidder understands that, in evaluating and determining Qualified Bids, the Debtors (a) will give more weight to Bids to acquire substantially all of the Purchased Assets; and (b) may decline to designate such Lot Bid as a Qualified Bid.

5.       The Sale of the Purchased Assets is on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Seller, their agents or estates, except to the extent set forth in the Asset Purchase Agreement of the Winning Bidder(s) (as defined herein) as approved by the Bankruptcy Court.  Pursuant to the form of Asset Purchase Agreement, the Winning Bidder(s) shall acquire the Purchased Assets free and clear of any and all Encumbrances, subject to certain other conditions and except as otherwise provided in an Asset Purchase Agreement, with such Encumbrances to attach solely to the net proceeds of the Sale with the same validity and priority as such Encumbrances applied against the Purchased Assets.

## THE BIDDING PROCEDURES

### Provisions Governing Qualifications of Bidders

6.       Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), all interested parties who wish to participate in the bidding process (a "Potential Bidder") must deliver the following to the Debtors:

> (i)       a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such Bid; and

> (ii)      an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Seller to a Potential Bidder) in form and substance satisfactory to the Debtors.

7.       As promptly as practicable after delivery of all materials required above, the Debtors will determine and will notify such party of their status as a Potential Bidder. The Debtors will regularly notify the Committee of the parties designated as Potential Bidders.

8.       For the avoidance of doubt, and unless otherwise ordered by the Bankruptcy Court after notice and a hearing in connection with a timely filed Stalking Horse Objection, any Stalking Horse Purchaser designated by the Debtors shall be considered a Qualified Bidder and any Stalking Horse Agreement shall be a Qualified Bid (as defined below).

### Due Diligence

9.       The Debtors, with the assistance of their advisors, will provide any Potential Bidder such due diligence access or additional information as the Debtors, in their reasonable discretion, deem appropriate, which may include differentiations between the diligence provided to strategic

and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information. Diligence inquiries should be made to the Debtors' Investment Banker using the contact information below:



| | |
|---|---|
| **Luis Pillich** | **Andrew R. Masotta** |
| Managing Director – Investment Banking | Director – Investment Banking |
| **Office/Text**   +1.267.571.4597 | **Office/Text**   +1.713.221.5154 |
| **Mobile Calls Only**   +1.610.937.2357 | **Mobile Calls Only**   +1.616.915.9109 |
| **Email**   LPillich@stout.com | **Email**   amasotta@stout.com |

The due diligence period will extend through and including the Auction. Unless otherwise deemed reasonably appropriate by the Debtors, and after consultation with the Committee, the Debtors and their representatives and advisors shall not be obligated to furnish any due diligence information after the Auction.

**Bid Deadline**

10.     A Potential Bidder that desires to make a Bid will deliver written copies of its Bid via email to the following parties (collectively, the "Bid Notice Parties"):

| Role | Name | Email |
|---|---|---|
| Razzoo's, Inc.<br>Chief Executive Officer | Philip Parsons | pparsons@razzoos.com |
| Stout Capital, LLC<br>Debtors' Investment Banker | Luis Pillich<br>Andrew Masotta | lpillich@stout.com<br>amasotta@stout.com |
| Okin Adams Bartlett Curry LLP<br>Debtors' Counsel | Matthew S. Okin<br>Ryan A. O'Connor | mokin@okinadams.com<br>roconnor@okinadams.com |

11.     Bids must be actually received by the Bid Notice Parties no later than **5:00 p.m. (prevailing Central Time) on December 8, 2025** (the "Bid Deadline"). The Bid Deadline may be extended by the Debtors in consultation with the Committee.

**Credit Bidding**

12.     The Senior Secured Lender and any other Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (each, a "Secured Party") shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid; *provided,* that a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected lien in favor of such Secured Party as to such claim(s). For the avoidance of doubt, and unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Senior Secured Lender shall be deemed a Qualified Bidder and any such credit Bid submitted by the Senior

4

Secured Lender on account of its secured claims under the DIP Loan Documents (as defined in the applicable DIP Orders) (subject to satisfaction of any senior secured claims, to the extent applicable) shall be deemed a Qualified Bid (subject to the following requirements):

> (i) to be selected as a Stalking Horse Purchaser or Winning Bidder, the Secured Party's Qualified Bid must include, either as a cash component or assumed liability in the Asset Purchase Agreement, an amount sufficient to pay (a) the minimum Success Fee payable to the Debtors' Investment Banker; and (b) Cure Amounts owed to counterparties to Assigned Contracts and Assigned Leases; and (c) other outstanding accrued and unpaid liabilities and budgeted expenses which, in the Debtors' business judgment (and in consultation with the Committee) are necessary to ensure payment of senior secured claims and unpaid administrative claims incurred in connection with the Chapter 11 Cases;

> (ii) if the Debtors select a Stalking Horse Purchaser that is not a Secured Party, then in order to be selected as a Winning Bidder, the Secured Party's Qualified Bid must include, either as a cash component or assumed liability in the Asset Purchase Agreement, an amount sufficient to pay (w) the aggregate contingent amount of the Stalking Horse Purchaser's Bid Protections; (x) the minimum Success Fee payable to the Debtors' Investment Banker; (y) Cure Amounts owed to counterparties to Assigned Contracts and Assigned Leases; and (z) other outstanding accrued and unpaid liabilities and budgeted expenses which, in the Debtors' business judgment (and in consultation with the Committee) are necessary to ensure payment of senior secured claims and unpaid administrative claims incurred in connection with the Chapter 11 Cases; *provided*, *however*, that such cash or assumed liability components in clauses (i) and (ii) above may consist of cash collateral in excess of all budgeted expenses, if any.

For the avoidance of doubt, the Debtors shall have the discretion, in consultation with the Committee, to determine whether a Secured Party's Bid meets the above requirements, or to modify or waive such requirements, and therefore constitutes a Qualified Bid.

13.     The Secured Party must notify the Debtors of its intention to credit Bid no later than the Bid Deadline (the "Credit Bid Notification").  If a Secured Party submits a Credit Bid Notification, it shall not be entitled to any consent or consultation rights in connection with the Auction or the evaluation of Qualified Bids. In the event the Secured Party subsequently revokes the Credit Bid Notification, any consent or consultation rights provided in these Bidding Procedures shall be reinstated on a go-forward basis.

14.     Nothing herein or in the Bidding Procedures Order shall be deemed to impair or otherwise limit the ability of the Committee to object to any credit bid or assert the "Challenge" rights set forth in the applicable DIP Orders.  As soon as reasonably practicable after a Challenge, if any, is filed with the Bankruptcy Court, the parties shall each consent to an expedited process and use reasonable efforts to have the Bankruptcy Court resolve the Challenge prior to the Sale Hearing.  To the extent a Challenge is pending at the time of the Sale Hearing and the Bankruptcy

Court has not ruled on the merits of such Challenge, without prejudice to the pending Challenge, a Qualified Bidder may still credit Bid up to the full amount of its contested secured claim.

**Provisions Governing Qualified Bids**

15.     A Bid will be considered a "Qualified Bid" only if the Bid is submitted by a Potential Bidder and complies with all of the following:

(A)     it specifies the Assets that are included in the Bid and, to the extent a Stalking Horse Purchaser is designated for some or all of the same Assets, states that such Qualified Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon terms more favorable to the Debtors and their estates than the terms set forth in the applicable Stalking Horse Agreement;

(B)     it includes a signed writing stating that the Potential Bidder's offer is binding on such Potential Bidder and irrevocable until the selection of the Winning Bidder, *provided, however*, that if such Potential Bidder is selected as the Winning Bidder or the Back-Up Bidder (each, as defined below) its offer shall remain irrevocable until the earlier of (i) the closing of the Sale to the Winning Bidder or the Back-Up Bidder, and (ii) the date that is thirty (30) days after the Sale Hearing;

(C)     it includes written confirmation that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement, including due diligence or financing contingencies, and that all necessary internal and shareholder approvals have been obtained prior to the submission of the Bid;

(D)     it includes a duly authorized and executed copy of an Asset Purchase Agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "Purchase Price"), together with redline copies marked to show any amendments and modifications to the Stalking Horse Purchase Agreement (if one exists) or any form Asset Purchase Agreement provided by the Debtors;

(E)     it includes written confirmation that the Bid is not contingent upon such Potential Bidder obtaining financing and includes financial statements or other written evidence, including (if applicable) a firm, irrevocable commitment for financing, proof of funds, and written confirmation establishing the ability and authority of the Potential Bidder to consummate the proposed Sale and pay the Purchase Price in cash, such as will allow the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by the Asset Purchase Agreement, including payment of the Purchase Price and providing adequate assurance of future performance under all Assigned Contracts and Assigned Leases to be assumed and assigned in the Sale;

6

(F)     it provides for the repayment of all other costs payable by such Potential Bidder, simultaneously with the closing of the Sale, including the Bid Protections (if any);

(G)     in the event that there is a Stalking Horse Purchaser, and the Potential Bidder wishes to submit a topping Bid on the same Assets that are included in the Stalking Horse Agreement, such Bid amount (the "Minimum Initial Overbid Amount") must have a value to the Debtors, determined in the Debtors' reasonable business judgment, after consultation with the Committee, that is greater than or equal to the sum of the value offered under the Stalking Horse Agreement, plus (i) the aggregate amount of the Bid Protections (if any), plus (ii) $150,000;

(H)     it contains provisions for identifying with particularity which executory contracts and unexpired leases the Potential Bidder wishes to assume and provides details of the Potential Bidder's proposal for the treatment of related Cure Amounts and the provision of adequate assurance of future performance to the counterparties to such Assigned Contracts and Assigned Leases;

(I)     it includes an acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its Bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) with the exception of any Stalking Horse Purchaser, is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid;

(J)     it includes evidence, in form and substance reasonably satisfactory to the Debtors of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement;

(K)     it is accompanied by a good faith deposit (a "Good Faith Deposit") in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to ten percent (10%) of the Purchase Price; *provided*, *however*, that any Potential Bidder submitting a Bid with a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit for the credit bid component of the Bid;

(L)     it contains full disclosure of the identity of each person or entity participating in the Bid for the Purchased Assets (including any equity holders or other financial backers, if the Potential Bidder and/or other bidding entity is formed for the purpose of submitting Bids or consummating a Sale Transaction);[2]

(M)     it contains a reasonable description of how the Potential Bidder intends to treat current employees of the Seller;

(N)     it contains a commitment to close the Sale of the Purchased Assets no later than thirty (30) calendar days after entry of the Sale Order;

(O)     it contains such other information as may be reasonably requested by the Debtors, in consultation with the Committee;

(P)     it identifies each regulatory and third-party approval required for the Potential Bidder to consummate a proposed Sale Transaction, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals; and

(Q)     it is received prior to the Bid Deadline.

16.     The Debtors shall have the discretion to determine whether a Bid meets the above requirements, or to modify or waive such requirements, and therefore constitutes a Qualified Bid. Upon determining that a Bid constitutes a Qualified Bid, the Debtors shall notify the Committee, the Stalking Horse Purchaser (if any), and the Potential Bidder of the fact that the Debtors have made such determination (and shall send a copy of such Qualified Bid to the Committee and Stalking Horse Purchaser). Such notifications shall be made promptly after such Qualified Bid determination has been made; *provided*, *however*, that such notification shall not be given later than two (2) business days following the expiration of the Bid Deadline.  Except as otherwise expressly set forth herein, only those Potential Bidders who have submitted Qualified Bids, as determined by the Debtors, shall be deemed "Qualified Bidders" for purposes of these Bidding Procedures and the Auction.

**Consent to Jurisdiction**

17.     All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

**Evaluation of Competing Bids**

18.     A Qualified Bid will be valued based upon several factors including, without limitation, (i) the amount of the Purchase Price provided by such Qualified Bid, (ii) the risks and timing associated with consummating such Qualified Bid, (iii) any proposed revisions to the Asset Purchase Agreement and/or the Stalking Horse Agreement, (iv) the ability of the Qualified Bidder

---

[2] The Debtors may approve joint Bids in their reasonable discretion on a case-by-case basis.

to obtain any applicable regulatory approvals, and (v) any other factors deemed relevant by the Debtors, in consultation with the Committee.  For purposes of such valuation, the full face amount of a credit bid shall be deemed to have the same value as the equivalent amount of cash.

**No Qualified Bids**

19.     If the Debtors do not receive any Qualified Bids, other than a Stalking Horse Bid (if any), the Debtors will not hold the Auction and the applicable Stalking Horse Purchaser will be named the Winning Bidder upon the expiration of the Bid Deadline.

**Auction Process**

20.     If the Debtors receive one or more Qualified Bids in addition to a Stalking Horse Bid, the Debtors will conduct an auction for the Purchased Assets (the "Auction") on **December 12, 2025 at 10:00 a.m. (prevailing Central Time)** at the Debtors' corporate offices located at 14131 Midway Road, Suite 750, Addison, Texas, or such other time or location as shall be timely communicated to parties entitled to attend.  The Debtors may permit attendance telephonically or by video conference pursuant to instructions to be provided by the Debtors to parties entitled to attend. Prior to the Auction, the Debtors will provide a copy of the Starting Bid (as defined below) to the Committee, the Stalking Horse Purchaser (if any), the Senior Secured Lender (if applicable), and all other Qualified Bidders entitled to attend the Auction. At the start of the Auction, the Debtors shall describe the material terms of the Starting Bid for the Purchased Assets on the record. The Debtors shall maintain a recording or transcript of the Auction and all Bids made and announced at the Auction, if any, including the Starting Bid, any and all Subsequent Bids, and the Winning Bid.  The Auction, shall be held in accordance with the following procedures:

     (A)     only the Qualified Bidders who have timely submitted Qualified Bids and their counsel will be entitled to attend and submit competing Bids at the Auction; *provided, however,* counsel for the Committee will be entitled to attend with no obligation to submit a competing Bid;

     (B)     the Stalking Horse Purchaser will, notwithstanding the elements of the Purchase Price set forth in the Stalking Horse Agreement, be entitled to make subsequent Bids for the Purchased Assets comprised of further credit bids, cash, additional or different consideration of any type, or any combination of the foregoing;

     (C)     each Qualified Bidder participating in the Auction may be required to confirm on the record at the Auction (i) it has not engaged in any collusion with respect to the bidding and the Auction, (ii) its Qualified Bid is a *bona fide* offer that it intends to consummate if selected as the Winning Bidder or Back-Up Bidder, and (iii) the Qualified Bidder agrees to serve as the Back-Up Bidder if its Qualified Bid is the next highest or otherwise best Bid after the Winning Bid;

     (D)     prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders who elect to attend the Auction must have at least one (1) individual representative

with authority to bind such Qualified Bidder in attendance at the Auction; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Winning Bidder and Back-Up Bidder at the conclusion of the Auction. Prior to the Auction, the Debtors will provide copies of the Qualified Bid, or combination of Qualified Bids, which the Debtors believe, after consultation with the Committee, is the highest or otherwise best offer for the Purchased Assets (the "Starting Bid") to all Qualified Bidders;

(E)     the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

(F)     bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "Subsequent Bid") providing a net value to the Debtors' estates of at least $150,000 above the prior Bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Committee, shall announce the Bid (and the value of such Bid) that they believe to be the highest or otherwise best Bid (each, the "Leading Bid");

(G)     a round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid;

(H)     except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by the Stalking Horse Purchaser), the Debtors shall give effect to the Bid Protections as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Debtors;

(I)     the Debtors may accept Bids for all or substantially all of the Purchased Assets; and

(J)     the Debtors expressly reserve the right, in their reasonable business judgment and after consultation with the Committee and the Senior Secured Lender (if applicable), to exercise their discretion in conducting the Auction (in a manner that is not inconsistent with the Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith), including (i) modifying bidding increments as necessary to achieve the highest and best Bids for the Purchased Assets, and (ii) determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders, the Debtors, Committee, and Senior Secured Lender, as applicable.

**Selection of Winning Bid**

21.     Prior to the conclusion of the Auction, the Debtors, in consultation with the Committee and Senior Secured Lender (if applicable), will review and evaluate each Qualified Bid submitted at the Auction (including by the Stalking Horse Purchaser) in accordance with the procedures set forth herein and determine, in their reasonable business judgment, which offer is the highest or otherwise best offer (one or more such Bids, collectively the "Winning Bid" and the Qualified Bidder(s) making such Bid(s), collectively, the "Winning Bidder"), and communicate to the Auction participants the identity of the Winning Bidder and the details of the Winning Bid. The determination of the Winning Bid by the Debtors at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

22.     The Qualified Bidder(s) with the next highest or otherwise best Qualified Bid, as determined by the Debtors, in consultation with the Committee and Senior Secured Lender (if applicable), will be required to serve as a back-up bidder (the "Back-Up Bidder") and keep its Bid open and irrevocable until the later to occur of thirty (30) days after entry of the Sale Order or the closing of the Sale on the Winning Bid with the Winning Bidder. If the Winning Bidder fails to consummate the Sale, the Back-Up Bidder will be deemed to be the new Winning Bidder, and the Debtors will be authorized and directed to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

23.     Within two (2) business day after conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Winning Bidder and the Back-Up Bidder. As soon as practicable after the conclusion of the Auction, the Debtors and Winning Bidder shall complete, execute, and file with the Bankruptcy Court all agreements, pleadings, and other documents necessary to consummate the Winning Bid, subject only to approval by the Bankruptcy Court.

**Return of Deposits; Bid Protections**

24.     All Good Faith Deposits shall be returned to each Qualified Bidder not selected by the Debtors as the Winning Bidder or the Back-Up Bidder no later than five (5) business days following the conclusion of the Auction.

25.     Any Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Sale Transaction at closing. If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid (or Back-Up Bid, as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

26.     The Bid Protections payable to any Stalking Horse Purchaser shall be paid not later than three (3) business days after the closing of the Sale Transaction with the Winning Bidder for the Purchased Assets bid upon by the Stalking Horse Purchaser from the proceeds of such Sale Transaction.

## SALE HEARING

27.     The Debtors will seek entry of a Sale Order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on **December [●], 2025 at [●] [a.m. / p.m.] (prevailing Central Time)**, subject to the availability of the Bankruptcy Court, to approve and authorize the Sale to the Winning Bidder on the terms and conditions memorialized in the applicable Asset Purchase Agreement and in accordance with the Bidding Procedures Order.

## RESERVATION OF RIGHTS

28.     The Debtors reserve the right, in their reasonable business judgment to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors and the Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require to support that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale Transaction at the prevailing Subsequent Bid amount.

29.     The Debtors, the Senior Secured Lender and the Committee agree that in the event of any dispute regarding the Sale process outlined in these Bidding Procedures: (i) any such party may seek an emergency hearing requesting that the Bankruptcy Court resolve such dispute; and (ii) the other parties shall consent to such request for an emergency hearing.

## FIDUCIARY OUT

30.     Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Bankruptcy Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtors or their officers and directors to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures to the extent the Debtors, in consultation with counsel, make a good faith determination that taking or failing to take such action, as applicable, would be inconsistent with applicable law or their fiduciary obligations under applicable law.

31.     Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Bankruptcy Court, until the closing of the Auction (if any), the Debtors and their respective directors, managers, officers, employees, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (i) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (ii) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (iii) maintain or continue discussions or negotiations with respect to Alternate Proposals; (iv) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (v) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

###