IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RAZZOO'S, INC., *et al.*, | Case No. 25-90522 (ARP) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF PHILIP PARSONS
IN SUPPORT OF DEBTORS' SALE MOTION
(Relates to Docket No. 69)**

Pursuant to 28 U.S.C. § 1746, I, Philip Parsons, hereby submit this declaration (this "Declaration") under penalty of perjury:

**A.     Introduction**

1.     I am the Chief Executive Officer of Razzoo's, Inc., *et al.*, the above-captioned debtors and debtors in possession (the "Debtors"). I have served in the capacity of CEO for the Debtors since 2023. In my capacity as CEO, I am familiar with the Debtors' books and records, restaurant operations, and restructuring initiatives. I am authorized to submit this Declaration on behalf of the Debtors.

2.     Except as otherwise indicated, all facts and statements set forth in this Declaration are based upon my personal knowledge, my discussions with members of the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' businesses, financial affairs, restaurant operations, restructuring initiatives, or any

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Razzoo's, Inc. (9753) and Razzoo's Holdings, Inc. (9608). The Debtors' service address is 14131 Midway Road, Suite 750, Addison, Texas 75001.

opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

3. I submit this Declaration in support of the *Debtors' Motion for (I) Entry of an Order (A) Approving Bidding Procedures; (B) Assumption and Assignment Procedures; and (C) Stalking Horse Procedures and Bid Protections; (D) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; and (E)Approving Forms of Notice Thereof; (II) Entry of an Order After the Sale Hearing Authorizing the Debtors to (A) Sell their Assets; and (B) Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Doc. No. 69] (the "Sale Motion").[2] I am familiar with the Sale Motion, the Bidding Procedures Order (defined below), and the marketing process for the Debtors' Assets. Both before and after the Petition Date, I have been personally involved in the Debtors' efforts to market their Assets for sale.

**B.      The Chapter 11 Cases**

4. These cases (the "Chapter 11 Cases") commenced on October 1, 2025 (the "Petition Date"), when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered by the Court under Case No. 25-90522.

5. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No request has been made for the appointment of a trustee or examiner. On October 14, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases [Docket No. 73].

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Sale Motion, the Bidding Procedures Order [Docket No. 130], or the proposed APA, as applicable.

6.     On November 7, 2025, the Court entered its *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Modify the Automatic Stay, and (III) Granting Related Relief* [Docket No. 137] (the "Final DIP Order").

**C.     The Assets**

7.     The Debtors own and operate a restaurant brand providing Cajun culture and cuisine across Texas and North Carolina. The Debtors' portfolio of restaurant Assets currently consists of twenty (20) free-standing and end cap locations.

8.     In connection with these restaurant operations, the Debtors are parties to numerous executory contracts and unexpired leases, as detailed in the Sale Motion and the exhibits filed by the Debtors in the Chapter 11 Cases in connection with the Sale Motion and Bidding Procedures Order.

**D.     Marketing and Sale Process**

9.     Prior to the Petition Date, on or about September 8, 2025, the Debtors engaged Stout Capital, LLC ("Stout") to commence a marketing process for purposes of conducting a sale of substantially all of the Debtors' Assets during these Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code.

10.    The Debtors filed their Sale Motion on October 13, 2025. After the Bidding Procedures Hearing held on November 4, 2025, the Court entered an order [Docket No. 130] (the "Bidding Procedures Order"), which among other things, established bidding procedures (the "Bidding Procedures") that governed the manner in which the Assets of the Debtors were to be marketed and sold. In the Debtors' business judgment, the Bidding Procedures outlined in the Bidding Procedures Order were necessary and appropriate under the circumstances to ensure the

3

Debtors received the highest and best bid for the Sale of substantially all of the Assets and maximum value for the Debtors' estates and their creditors.

11. In accordance with the Bidding Procedures Order, the Debtors caused the Sale Notice and Cure Notice to be served upon all creditors and counterparties to executory contracts and unexpired leases which may be potentially designated for assumption and assignment to a Winning Bidder as more fully set forth in the Bidding Procedures. *See* Docket Nos. 147 and 148.

12. On November 26, 2025, in accordance with the Bidding Procedures Order, the Debtors filed a *Notice of Extension of Stalking Horse Designation Deadline* [Docket No. 163] and extended the Stalking Horse Designation Deadline to and including December 2, 2025.

13. On December 2, 2025, Debtors filed their *Notice of Selection of Stalking Horse Purchaser* [Docket No. 166]. As more fully set forth in the Stalking Horse Selection Notice, the Debtors selected the DIP Lender, ThirtyThree97 LLC, as the stalking horse purchaser (the "Stalking Horse Purchaser" or "Buyer") for the Purchased Assets identified in that certain Asset Purchase Agreement [Docket No. 166-1] (the "APA") attached to the Stalking Horse Selection Notice. I am familiar with the APA and was personally involved in the Debtors' efforts to negotiate favorable terms.

14. After expiration of the Bid Deadline established by the Bidding Procedures, the Debtors, in consultation with the Committee, determined that no other Qualified Bids were received prior to the Bid Deadline and that the Stalking Horse Purchaser should be selected as the Winning Bidder. On December 9, 2025, the Debtors filed their *Notice Selection of Winning Bidder* [Docket No. 178].

### E. The Sale Motion and APA Should Be Approved

15. As the Winning Bidder, the Debtors believe that the Buyer has operated on a fair, open and level playing field, both before and after the Bid Deadline, with respect to the bidding process, the APA, and the Contemplated Transactions reflected in the APA. The Debtors further believe that the APA was negotiated in good faith and at arm's length between the parties.

16. To the extent the Buyer has elected, or will elect prior to the Closing of the Sale in accordance with the terms of the APA, to have certain of the Debtors' executory contracts and unexpired leases designated as Assigned Contracts to be assumed by the Debtors and assigned to Buyer in connection with Closing, the Debtors believe that such Assigned Contracts are integral parts of the Purchased Asset mix and critical to the Debtors' ongoing restaurant operations. *See* Docket No. 192 (*Notice of Filing Schedule of Proposed Assigned Contracts and Excluded Contracts*). Accordingly, the Debtors have determined that assumption and assignment of those certain Assigned Contracts in connection with the Sale is necessary to maximize value for the benefit of the Debtors' estates through the Buyer's payment of the applicable Cure Costs to the relevant counterparties. Without such assumption and assignment, the Debtors do not believe the Buyer would be willing to consummate the Contemplated Transactions set forth in APA.

17. Moreover, approval of the APA and the other relief requested in the Sale Motion as it relates to the Sale of the Purchased Assets to Buyer will relieve the Debtors' estates of significant liabilities in these Chapter 11 Cases. In addition to other significant Assumed Liabilities provided for in the APA, the Purchase Price consideration for the Purchased Assets specifically includes, in pertinent part, a Credit Bid of the full amount of the Senior Secured Prepetition Obligations and DIP Obligations owed to Buyer, as DIP Lender, pursuant to the Final DIP Order. As a result, and except as otherwise provided in the Sale Order, all DIP Liens,

Replacement Liens and claims granted to Buyer, as DIP Lender, pursuant to the Final DIP Order to secure the DIP Obligations on the DIP Collateral and Prepetition Collateral shall, and effective upon Closing, be forever released, discharged and waived in their entirety; and the DIP Lender shall have no further claims against the Debtors, their estates, or property of the estates. Accordingly, I believe the Sale to Buyer pursuant to the APA is necessary and appropriate to maximize the value to be realized by the Debtors' estates and their creditors.

**F.      Conclusion**

18.      In sum, the Stalking Horse Bid submitted by Buyer and selected by the Debtors as the Winning Bid is the highest and best offer for the purchase of the Purchased Assets identified in the APA, and the Debtors have articulated a sound business purpose for consummating the Contemplated Transactions set forth in the APA. The Debtors are prepared to close the transaction with the Buyer because the Debtors have determined that it is in the best interests of their estates and other stakeholders to consummate the sale of the Purchased Assets.

19.      Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge and belief.

Dated:  December 22, 2025.

By:      /s/ *Philip Parsons*
Philip Parsons
Chief Executive Officer
Razzoo's, Inc.