IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RAZZOO'S, INC., *et al.*, | Case No. 25-90522 (ARP) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF LUIS PILLICH**
**IN SUPPORT OF DEBTORS' SALE MOTION**
**(Relates to Doc. No. 69)**

Pursuant to 28 U.S.C. § 1746, I, Luis Pillich, hereby submit this declaration (this "Declaration") under penalty of perjury:

**A.   Introduction**

1. I am the Managing Director of Stout Capital, LLC ("Stout"), the investment banker for Razzoo's, Inc., *et al.*, the above-captioned debtors and debtors in possession (the "Debtors"). I have over twenty years of experience in private equity, financial advisory, and capital markets. Except as otherwise indicated, all facts and statements set forth in this Declaration are based upon my personal knowledge, my discussions with members of the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' businesses, financial affairs, restaurant operations, restructuring initiatives, or any opinions based upon my experience and knowledge.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Razzoo's, Inc. (9753) and Razzoo's Holdings, Inc. (9608).  The Debtors' service address is 14131 Midway Road, Suite 750, Addison, Texas 75001.

2. I submit this Declaration in support of the *Debtors' Motion for (I) Entry of an Order (A) Approving Bidding Procedures; (B) Assumption and Assignment Procedures; and (C) Stalking Horse Procedures and Bid Protections; (D) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; and (E) Approving Forms of Notice Thereof; (II) Entry of an Order After the Sale Hearing Authorizing the Debtors to (A) Sell their Assets; and (B) Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Doc. No. 69] (the "Sale Motion").[2] I am familiar with the Sale Motion, the Bidding Procedures Order (defined below), and the marketing process for the Debtors' Assets. Both before and after the Petition Date, I have been personally involved in the Debtors' efforts to market their Assets for sale.

**B.  The Chapter 11 Cases**

3. These cases (the "Chapter 11 Cases") commenced on October 1, 2025 (the "Petition Date"), when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered by the Court under Case No. 25-90522.

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No request has been made for the appointment of a trustee or examiner. On October 14, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases [Docket No. 73].

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Sale Motion, the Bidding Procedures Order [Docket No. 130], or the proposed APA, as applicable.

**C.     The Assets**

5.     The Debtors own and operate a restaurant brand providing Cajun culture and cuisine across Texas and North Carolina. The Debtors' portfolio of restaurant Assets currently consists of twenty (20) free-standing and end cap locations.

6.     In connection with these restaurant operations, the Debtors are parties to numerous executory contracts and unexpired leases, as detailed in the Sale Motion and the exhibits filed by the Debtors in the Chapter 11 Cases in connection with the Sale Motion and Bidding Procedures Order.

**D.     Marketing and Sale Process**

7.     Prior to the Petition Date, the Debtors began the process of marketing and selling substantially all of their Assets during the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code. On or about September 8, 2025, the Debtors engaged Stout to commence the marketing process.

8.     On or about September 30, 2025, Stout commenced outreach to potential third-party buyers. As part of their comprehensive strategy, Stout sent out teasers to one hundred twenty-five (125) parties consisting of a broad range of restaurant and hospitality focused groups and distressed investor groups throughout North America.  Following sending out teasers to potential buyers, Stout contacted prospective investors multiple times, both telephonically and via email, to confirm receipt of the materials and/or interest in the opportunity.  Thereafter, twenty-six (26) parties agreed to sign confidentiality agreements and accessed the data room. Two (2) of these parties submitted indications of interest and engaged in substantial due diligence. The Buyer's due

diligence efforts consisted of extensive review of the virtual data room, meetings with the Company's senior management and visit to select Debtors' locations.

9. The Debtors filed their Sale Motion on October 13, 2025. After the Bidding Procedures Hearing held on November 4, 2025, the Court entered an order [Docket No. 130] (the "Bidding Procedures Order"), which among other things, established bidding procedures (the "Bidding Procedures") that governed the manner in which the Assets of the Debtors were to be marketed and sold. I believe the Bidding Procedures outlined in the Bidding Procedures Order were necessary and appropriate under the circumstances to ensure that: (i) all potential bidders received a full and fair opportunity to pursue a Sale transaction for the Debtors' Assets; and (ii) that the Debtors received the highest and best bid for the Sale of substantially all of the Assets and maximum value for their estates and creditors. To the best of my knowledge and belief, the Debtors and Stout fully complied with terms and conditions of the Bidding Procedures Order and accompanying Bidding Procedures at all times during the marketing process approved by the Court.

10. On November 26, 2025, in accordance with the Bidding Procedures Order, the Debtors filed a *Notice of Extension of Stalking Horse Designation Deadline* [Docket No. 163] and extended the Stalking Horse Designation Deadline to and including December 2, 2025.

11. On December 2, 2025, Debtors filed their *Notice of Selection of Stalking Horse Purchaser* [Docket No. 166]. As more fully set forth in the Stalking Horse Selection Notice, the Debtors selected the DIP Lender, ThirtyThree97 LLC, as the stalking horse purchaser (the "Stalking Horse Purchaser" or "Buyer") for the Purchased Assets identified in that certain Asset Purchase Agreement [Docket No. 166-1] (the "APA") attached to the Stalking Horse Selection

4915-2000-3971, v. 3

Notice. I am familiar with the APA and was personally involved in assisting the Debtors in their efforts to negotiate favorable terms.

12. After expiration of the Bid Deadline established by the Bidding Procedures, the Debtors, in consultation with the Committee, determined that no other Qualified Bids were received prior to the Bid Deadline and that the Stalking Horse Purchaser should be selected as the Winning Bidder. On December 9, 2025, the Debtors filed their *Notice Selection of Winning Bidder* [Docket No. 178].

### E. The Sale Motion and APA Should Be Approved

13. As investment banker for the Debtors in these Chapter 11 Cases, I believe the Stalking Horse Bid submitted by Buyer and selected by the Debtors as the Winning Bid is the highest and best offer for the purchase of the Purchased Assets identified in the APA. I further believe that the Debtors, with the assistance of Stout and the Debtors' other retained professionals, have fully complied with the terms of the Bidding Procedures Order.

14. To the best of my knowledge and belief, the Buyer has at all times operated on a fair, open and level playing field, both before and after the Bid Deadline, with respect to the bidding process with respect to the bidding process, the APA, and the Contemplated Transactions reflected in the APA. I further believe that APA was negotiated in good faith and at arm's length between the parties.

### F. Conclusion

15. In sum, the Stalking Horse Bid submitted by Buyer and selected by the Debtors as the Winning Bid is the highest and best offer for the Purchased Assets identified in the APA.

Accordingly, I believe the relief requested in the Sale Motion, as it relates to approval of the APA and the Sale of the Purchased Assets to the Buyer, should be granted by the Court.

16. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge and belief.

Dated:  December 22, 2025.

By: /s/ *Luis Pillich*
 Luis Pillich
 Managing Director
 Stout Capital, LLC

6